**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MASTEC NORTH AMERICA, INC.,**

                                **Petitioner,**

-against-                                                  **1:08-CV-168**

**MSE POWER SYSTEMS, INC.,**

                                **Respondent.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

MasTec North America, Inc. (MasTec) commenced this action under the Court's diversity jurisdiction seeking to confirm an Arbitration Award pursuant to Section 9 of the Federal Arbitration Act. See Pet. [dkt. # 1].[1] MSE Power Systems, Inc. (MSE) cross-moves to vacate the Arbitration Award. Cross Mot. [dkt. # 7].

**II. BACKGROUND**

MSE was the designer/builder on two constructions projects, one in Waymart, Pennsylvania ("Waymart Project"), and the other in Mayersdale, Pennsylvania ("Mayersdale Project"). MasTec entered into Subcontractor Agreements with MSE on both projects under which MasTec provided labor, material and other servies to MSE.

---

[1] See Hall Street Associates, L.L.C. v. Mattel, Inc., - - U.S. - -, - -, 128 S. Ct. 1396, 1401, 170 L.Ed.2d 254 (2008)("As for jurisdiction over controversies touching arbitration, the [Federal Arbitration Act] does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.")(quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 25, n. 32, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983)).

1

During the course of the two projects, disputes arose concerning MSE's payment for labor, material and other services rendered by MasTec.  On August 4, 2004, MSE filed and served MasTec with a Demand to Arbitrate with the American Arbitration Association ("AAA") concerning the disputes.  MasTec consented to arbitration and served a counterclaim.

The parties agreed to be bound by the AAA's Construction Industry Arbitration Rules, and selected a panel of three arbitrators.  They then engaged in discovery that included the exchange of over 10,000 pages of documents, the service and reply of dozens of interrogatories, and the videotaped deposition of 12 witnesses.  At the conclusion of discovery, eight days of hearings were conducted before the Arbitration Panel during which both parties presented documentary and testimonial evidence.  At the conclusion of the hearings, the parties submitted post-arbitration hearing briefs.

On January 8, 2008, the Arbitration Panel rendered a unanimous award in MasTec's favor against MSE.  In the Arbitration Award, MSE was ordered to pay MasTec $2,629,235.03 plus an additional amount of $23,184.09 for administrative fees, arbitrator compensation and expenses for a total Arbitration Award of $2,652,419.12.  MasTec commenced this action on January 12, 2008 seeking an order confirming the January 8, 2008 Arbitration Award and a judgment against MSE in the amount of $2,652,419.12 plus statutory interest from the date of the award.  On March 28, 2008, MSE filed a cross-motion to vacate the Arbitration Award, contending that MSE was denied a full and fair opportunity to present evidence at the hearing, and that the Arbitration Panel exceeded their authority by rendering an "irrational" award.  After receiving briefing, reply briefing, affidavits and exhibits from the parties on the petition and cross-motion, the matter is now

before the Court on the parties' submissions.

## III.   STANDARD OF REVIEW

Petitioner argues that the Arbitration Award should be confirmed pursuant to Section 9 of the Federal Arbitration Act (FAA or Act). See 9 U.S.C. § 1, *et seq.* Respondent argues that the Arbitration Award should be vacated pursuant to the authority of both federal and New York State law.[2] MSE's arguments for vacatur are the same under federal or state law, and, as addressed below (and acknowledged by MSE), the standards of review under federal and New York law are substantially the same. Thus, there is no reason to determine whether federal of state law applies. See Wise v. Marriott Intern., Inc., 2007 WL 2780395, at * 2  (S.D.N.Y. Sep 24, 2007) ("[B]ecause, as discussed below, it does not affect the outcome here, the Court need not decide whether the FAA governs. . . .  Accordingly, the Court will apply the relevant provisions of the FAA and New York's arbitration statute in determining the validity of the Award.").

The FAA represents a strong federal policy favoring arbitration agreements. "Congress enacted the [FAA] to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" Hall Street Associates, L.L.C. v. Mattel, Inc.,  - - U.S. - -,  - -,  128 S. Ct. 1396, 1402, 170 L. Ed.2d 254 (2008)(quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed.2d 1038 (2006)).

The Act [ ] supplies mechanisms for enforcing arbitration awards: a judicial

---

[2]The contract for the Meyersdale Project specified that all disputes would be decided by arbitration "in accordance with the laws of New York."  The contract for the Waymart Project contained the same clause but which excluded the phrase "in accordance with the laws of New York."  Thus, Respondent "brings [its] motion under both federal and state law." Resp. Mem. L. p. 3, fn 1.

> decree confirming an award, an order vacating it, or an order modifying or correcting it. §§ 9-11. An application for any of these orders will get streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court. § 6. Under the terms of § 9, a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11. Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one.

Id. (footnotes omitted)

Confirmation of an arbitration award under the FAA is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co. v. Gottdienier, 462 F.3d 95, 110 (2d Cir. 2006)(internal citations omitted). Given the public policy favoring arbitration, a court's review of an arbitration award under the FAA is extremely deferential. Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 139-139 (2d Cir. 2007).[3] "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 426 F.3d at 110. "Only a barely colorable justification for the outcome reached" is

---

[3] In Porzig, the Second Circuit wrote:

> This Court has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process, see, e.g., Halligan v. Jaffray, Inc., 148 F.3d 197, 200 (2d Cir. 1998) (noting the strong judicial support of "the use of arbitration as a device to resolve disputes"). The value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process. See DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 821 (2d Cir. 1997); National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc., 165 F.3d 184, 190-91 (2d Cir. 1999). To encourage and support the use of arbitration by consenting parties, this Court, therefore, uses an extremely deferential standard of review for arbitral awards. See [Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003)].

497 F.3d at 139-139.

necessary to confirm the award.  Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)).

A party seeking vacatur "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  In the Second Circuit, courts will "vacate an award only upon finding a violation of one of the four statutory bases [enumerated in Section 10(a) of the FAA ], or, more rarely, if we find a panel has acted in manifest disregard of the law." Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

"Section 10 . . . provides for vacatur of an arbitration award in four situations, all of which address 'egregious departures from the parties' agreed-upon arbitration.'" Wellpoint Health Networks, Inc. v. John Hancock Life Insurance Co., 2008 WL 1839014 (N. D. Ill. April 24, 2008) (quoting Hall Street, 128 S. Ct. at 1404).  Specifically, Section 10(a) allows vacatur:

> (1)    where the award was procured by corruption, fraud, or undue means;
>
> (2)    where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

The Supreme Court's holding in Hall Street limits the application of "manifest

5

disregard of the law" to the Section 10 bases. See Hall Street Associates, 128 S. Ct. at 1404-1406; see also Chase Bank USA, N.A. v. Hale, --- N.Y.S.2d ----, 19 Misc.3d 975, 2008 WL 1746984, at * 4 - *5 (N.Y. Sp. Ct., N.Y. County, March 31, 2008).[4]  Accordingly, this Court will view "manifest disregard of law" as judicial interpretation of the Section 10 requirements, rather than as a separate standard of review, and will resort to existing case law to determine its contours. Hale, 2008 WL 1746984, at *5.

> [R]eview under the doctrine of manifest disregard of the law is highly deferential and such relief is appropriately rare. Duferco, 333 F.3d at 389. An arbitral award may be vacated for manifest disregard only where a petitioner can demonstrate "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case." [Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004)] (internal quotation marks omitted).

---

[4]The New York Supreme Court, New York County, wrote in Hale:

The Supreme Court has now announced, however, that section 10 of the FAA provides the exclusive route for expedited judicial vacatur of an arbitral award under the federal statutory scheme. In Hall Street Assocs., LLC v. Mattel, Inc., --- U.S. ----, 128 S.Ct. 1396, --- L.Ed.2d ---- (Mar. 25, 2008), the Court examined the "manifest disregard" standard of the [Wilko v. Swan, 346 U.S. 427, 436-37, 74 S. Ct. 182, 98 L. Ed. 168 (1953)] Court for the first time, and found the concept ambiguous:

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them.... Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."

(Id. at 1404 [citations omitted] ). Although the Court in Hall Street did not settle on its own definition of the term, it rejected the notion that "manifest disregard" embodies a separate, non-statutory ground for judicial review under the FAA. (See id. at 1404-1405, 1406). Nonetheless, by favorably citing the above-quoted language from its earlier decision in [First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995)], the Hall Street Court appears to have done nothing to jettison the "manifest disregard" standard of Wilko. (Id. at 1404). Accordingly, this court will view "manifest disregard of law" as judicial interpretation of the section 10 requirement, rather than as a separate standard of review. It seems appropriate, however, since the standard has apparently not been overruled by the Court, to resort to existing case law to determine its contours.

2008 WL 1746984, at * 4 - *5.

6

Porzig, 497 F.3d at 139.

When applying New York law, the scope of review is equally limited.

Under New York law, courts may vacate arbitration awards only in some limited circumstances, namely, when the award violates a strong public policy, is irrational, or clearly exceeds a specifically enumerated limitation on an arbitrator's power under CPLR 7511(b)(1).[5]  (Matter of New York State Correctional Officers & Police Benevolent Assn., 94 N.Y.2d 321, 326 [1999]). "A court cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one"(id.). "Indeed, even in circumstances where an arbitrator makes errors of law or fact, courts will not assume the role of overseers to conform the award to their sense of justice" (id.).

Sahni v. Prudential Equity Group, Inc., 2007 WL 586613, at * 2 (N.Y. Sup. Ct., N.Y.

County, Jan. 26, 2007)(footnote in original).

**IV.   Discussion**

    **a.**    **Vacatur**

        **1.**    **Full and Fair Hearing**

MSE's first argument for vacatur is that it was denied a full and fair arbitration

hearing. See Resp. Mem. Law, pp. 4-8.   In this regard, MSE asserts:

> MasTec originally claimed $795,598 for alleged unwritten, unapproved "change orders" related to the Meyersdale Project. In their opening statement, however, counsel for MasTec announced for the first time that MasTec was waiving most of these claims and instead claimed only $54,991.50 in Meyersdale change orders.   [C]ounsel for MSE immediately pointed out this change in heart.  The chairman of the panel, Walter Breakell, verbally acknowledged MasTec's change in strategy and commented that MSE's job would now be easier.  . . .  As a direct result of MasTec's waiver, MSE had no opportunity to present evidence rebutting the waived claims.

---

[5] Under CPLR 7511(b)(1), an arbitration award must be vacated if the court finds that a party to the proceeding was prejudiced by (1) corruption, fraud or misconduct in procuring the award; (2) partiality of an arbitrator; (3) an arbitrator exceeding his power or so imperfectly executing it that a final and definite award upon the subject matter submitted was not made; or (4) the failure to follow procedure.

7

> After the close of evidence, however, MasTec changed course and renewed its claims for Meyersdale "change orders" to $307,469.50. This change of heart and the manner in which it had affected MSE's presentation of evidence at the hearing was promptly pointed out by MSE in its Reply Brief. Notwithstanding this failure of fundamental due process, the arbitration panel awarded MasTec $218,745 in Meyersdale change orders.

Id. pp. 5-6.[6]

MasTec tells a decidedly different version of events. MasTec claims that because it was only entitled to give a brief opening statement, it limited the referenced-portion of its statement to seven (7) of the twenty-two (22) change orders that MSM had conceded were legitimate but nonetheless refused to pay. Pet. Mem. Law in Opp. to Cross-Mot., p. 7 [dkt. # 10].[7] MasTec asserts that "[t]he purpose of focusing on seven (7) of the twenty-two (22) change orders was merely to point out MSE's illegal conduct to the Arbitration Panel." Id.

MasTec further contends that when MSE's counsel asked MasTec's counsel whether MasTec was limiting its claim to the seven (7) change orders referenced in the opening statement, he was told MasTec was not. Id. p. 8. When MSE's counsel addressed the Arbitration Panel with the argument that MasTec should be limited to the seven (7) referenced change orders, the Chair of the Arbitration Panel, Walter Brekell, supposedly "laughed and told [MSE's counsel] that it was an opening statement and that the evidence presented at the hearing will dictate the parties recovery." Id.

MasTec also asserts, without contradiction, that "[t]he only evidence relied on by

---

[6]The cited factual propositions from MSE's Memorandum of Law are supported by the affidavit of Attorney Thomas Newman. See Newman March 28, 2008 Aff. [dkt. # 7-14]. MSE provides further factual support for its contentions in its reply papers through the declaration of Attorney Barbara L. Goodwin. See Goodwin April 9, 2008 Decl. [dkt. # 13-3].

[7]The cited factual propositions from MesTec's Memorandum of Law are supported by the affirmation of Attorney Christopher J. Belter. See Belter April 3, 2008 Affirm [dkt. # 9].

8

MasTec in support of the Meyersdale change orders was the [videotaped deposition] testimony of a former MasTec project manager . . . and three exhibits submitted into evidence by MSE." Id.   The former MasTec project manager had been contacted by, and apparently met with, MSE's counsel before MSE noticed him for, and conducted, his videotaped deposition. Id. p. 8-9.  "There were no live witnesses to cross-examine at the arbitration hearing concerning the Meyersdale change orders." Id.   Instead, "MasTec relied upon MSE's evidence and its previously videotaped testimony" of the former MasTec project manager relative to the Myersdale change orders. Id.

MSE's first argument for vacatur finds its legal bases under FAA § 10(a)(3)("refusing to hear evidence pertinent and material to the controversy") and CPLR §§ 7511(b)(1)(iv)(the failure to follow procedure) &  7506(c) (in an arbitration proceeding, "[t]he parties are entitled to be heard, to present evidence and to cross-examine witnesses.").  Under these provisions,[8] an arbitration award will be vacated when the parties have agreed to a hearing yet one of the parties has been denied the opportunity to be heard, to present relevant evidence, or to cross-examine witnesses. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19-20 (2d Cir. 1997) (vacating arbitration award pursuant to FAA § 10(a)(3) where arbitration panel refused to hear pertinent testimony); Coty, Inc. v. Anchor Construction, Inc., 2003 WL 139551, at *3 - *4  (N.Y. Sup. Ct., N.Y. County, 2003)(vacating arbitration award because, *inter alia*, the arbitrators refused to

---

[8]As indicated above, the standard for determining whether a violation occurred is the same whether under 9 U.S.C. § 10(a) (3) or CPLR § 7511(b)(1). Wise, 2007 WL 2780395, at * 2  (citing Fairfield Towers v. Fishman, 2003 WL 21738976, at *1 (S.D.N.Y. July 28, 2003) (no conflict between 9 U.S.C. § 10(a) (3) and CPLR § 7511(b)(1)); Yonir Techs., Inc. v. Duration Sys. (1992) Ltd., 244 F. Supp.2d 195, 203 (S.D.N.Y.2002) ("There is no conflict between [CPLR § 7511(b)(1) ] and [9 U.S.C. § 10(a)(3) ] on any of the issues relevant to this dispute, and the holdings of this case can rest on either body of law.")).

9

allow a party to participate in the hearing), aff'd on other grounds 776 N.Y.S.2d 795 (4th Dept. 2004).  "Courts have interpreted § 10(a)(3) to mean that, 'except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review.'" Capgemini U.S. LLC v. Sorensen, 2005 WL 1560482, at *4 (S.D.N.Y. July 1, 2005) (quoting Tempo Shain, 120 F.3d at 20).

MSE's argument is that it was somehow duped by MasTec into believing that 15 of the 22 change orders had been waived, thereby lulling it into the false belief that it did not need to present rebuttal evidence on these claims. See Goodwin Decl.  ¶ 11 ("MSE specifically relied on MasTec's representation that it was waiving all but 7 of its claimed change orders for the Meyersdale Project. Based on MasTec's representation that it had waived 15 of its claims, MSE did not present evidence rebutting those claims."). The argument fails to justify vacatur.  MSE raised the waiver argument in its post-hearing briefs, yet it was evidently rejected by the Arbitration Panel as demonstrated by the Arbitration Award finding in favor of MasTec on the Meyersdale change order claims. Affording the Arbitration Award and the Arbitration Panel due deference, it appears that the facts surrounding MasTec's opening statement are closer to that represented by MasTec than by MSE.  Thus, the failure to present rebuttal evidence on these claims appears to be the result of the tactical decision of MSE's counsel, not of anything done by the Arbitration Panel.

Even assuming, *arguendo*, that Arbitration Panel Chairman Breakell stated that "MSE's job would now be easier" when MSE's counsel asserted that MasTec waived 15 of the 22 Meyersdale change order claims, there is no dispute that MasTec's evidence in support of all these change orders came from MSE's documentary evidence and from a

videotaped witness that MSE deposed *before* the purported waiver during the opening statement. There is no contention that MSE objected to the evidence as it was presented, or that the arbitrators prevented MSE from presenting witnesses or evidence at the hearing. Thus, there is no basis to conclude that MSE was deprived of the opportunity to cross-examine witnesses, present evidence, or conduct discovery on the change order claims. Accordingly, the motion for vacatur on this ground is denied. See Capgemini, 2005 WL 1560482, at * 7 ("Because Capgemini had adequate notice that monetary damages were sought and an opportunity to be heard before the close of the hearing, it cannot now argue that its failure to take advantage of those opportunities requires that this Court vacate the Award pursuant to § 10(a)(3)."); Yonir Techs., Inc. v. Duration Sys. (1992) Ltd., 244 F. Supp.2d 195, 209 (S.D.N.Y.2002)(Denying motion to vacate when "[n]othing in the record . . . suggests that the Panel failed to give Plaintiffs an opportunity to submit evidence and argument. The record . . . indicates that no award even issued from the Panel before the parties had ample opportunity to make their position known to the Panel. . . . [A]nd, significantly, there is no evidence that either party ever attempted to present any evidence that the Panel refused to receive.").

    **2.    Irrational Decision**

MSE's second argument for vacatur is that the Arbitration Panel "exceeded their powers" by issuing an "irrational decision." In this regard, MSE asserts:

> The Arbitration Panel awarded MasTec $2.6 million, exactly half of what MasTec demanded. They failed to weigh the claims carefully and instead abdicated their authority by simply cutting MasTec's demand in half and using that as basis for the award. The Arbitration Panel then attempted to justify the award by playing with the numbers in order to reach $2.6 million.
>
> . . .

11

> There are three obvious discrepancies in the Award that are unsupported by the evidence and provide direct evidence of this manipulation of the claims. First, all warranty back charges were awarded for the Meyersdale Project while none were awarded for the Waymart Project. . . . Second, MasTec's attorney fees were awarded for one project (in an amount greater than requested by MasTec) and not for the other. . . . Third, over $218,000 was awarded to MasTec for change orders on the Meyerdale Project after MasTec's counsel had expressly waived those claims at the hearing.

MSE Mem. L. p. 9.

MasTec counters that, in light of the Arbitration Award's "detailed and itemized breakdown of the components of the award with respect to each of the two construction projects," it is evident that the "Arbitration Panel carefully evaluated and made a determination with respect to all the claims and defenses asserted by the parties." MasTec Mem. L. p. 13 (citing Arbitration Award, Ex. C to Belter March 13, 2008 Aff. [dkt. # 5]). As to the warranty back charges, MasTec notes that the "type of repair work that MSE alleged it had to perform on each of these projects differed greatly." Id. p. 14. In this regard, MasTec contends that: Warranty work on the Waymart Project "was relatively minor and was performed by MSE's own personnel;" there was evidence that MSE was paid for some of the Waymart repair work by a third party; and there was evidence that MSE failed to adhere to contract notice provisions entitling MasTec an opportunity to repair its work on the Waymart Project before MSE engaged a third party. Id. Thus, MasTec argues, there was a basis for the differential in the warranty back charges for the two projects.

As to attorney's fees, MasTec notes that it was awarded such fees on the Meyersdale Project but not on the Waymart Project. It speculates that the difference was due to a determination by the Arbitration Panel that MasTec was a "substantially prevailing

12

party" on the Meyersdale Project (recovering 70% of amount sought) but not on the Waymart Project (recovering 40% of amount sought).[9] As to the award on the Meyersdale change orders, MasTec asserts that it did not waive any of the claims and that evidence supporting the claims was presented to the Arbitration Panel.

MSE's second argument for vacatur is based upon FAA § 10(a)(4) and N.Y. CPLR § 7511(b)(1)(iii), both of which provide for vacatur where the arbitrators "exceeded [their] powers, or so imperfectly executed them" that a final and definite award "upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4); N.Y. CPLR 7511(b)(1)(iii).

> The Court of Appeals for the Second Circuit has "consistently accorded the narrowest of readings" to the FAA's authorization to vacate awards pursuant to § 10(a)(4). Banco de Seguros del Estados v. Mutual Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003); Westerbeke Corp v. Daijatsu Motor Co., Ltd., 304 F.3d 200, 220 (2d Cir. 2002) (citation omitted). The court's inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Westerbeke, 304 F.3d at 220 (quoting [DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997)]. The Court must determine "whether the arbitrator[s] acted within the scope of [their] authority," or whether the arbitral award is merely the "arbitrator[s'] own brand of justice." Banco de Seguros del Estados, 344 F.3d at 262 (citing Local 1199 v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992)).

Capgemini, 2005 WL 1560482, at * 4.

"Even where the arbitrator makes a mistake of fact or law . . . the award is not subject to vacatur 'unless the court concludes that it is totally irrational or violative of a strong public policy' and thus in excess of the arbitrator's powers.'" Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146, 155 (1995)(internal citations omitted).  "For a

---

[9]MasTec argues that under the Pennsylvania Prompt Payment Act, 73 PA. STAT. § 509, *et seq.*, which the Arbitration Panel applied, see Arb. Award, p. 2, only a  "substantially prevailing party" is entitled to attorney's fees.

13

Court to grant vacatur on the grounds that an award is totally irrational, there must be no proof whatever to justify the award." Yonir Techs., 244 F. Supp.2d at 210 (interior quotation marks and citation omitted).

Here, the award is not "totally irrational." MasTec has provided an explanation for the asserted discrepancies in the award with regard to the warranty back charges and the change orders on the Meyerdale Project. The explanation goes well beyond "a barely colorable justification for the outcome reached." D.H. Blair, 426 F.3d at 110. As stated above, "the rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." Id.; see also Hale, 2008 WL 1746984, at * 8 ("Even had the arbitrators not stated their reasoning, however, where the grounds for the arbitrators' decision can be inferred from the facts of the case, the award must be confirmed."). For the reasons asserted by MasTec, grounds for the award for the warranty back charges and the change orders on the Meyerdale Project can be inferred from the facts of the case.

Further, MSE fails to meet its heavy burden of demonstrating that the award for attorneys fees on the Meyersdale Project, but not on the Waymart Project, is totally irrational or based upon a manifest disregard for the law. In this context, MSE asserts that because the Panel awarded statutory interest and penalties on both projects under the Pennsylvania Prompt Payment Act, 73 PA. STAT. § 509, *et seq*. ("PPPA"), but awarded attorneys fees only on the Meyersdale Project, the award "defies logic" and is evidence "that the Arbitration Panel was selecting numbers in order to reach its target of $2.6 million. . . ." MSE's Mem. L. p. 12. MSE's argument, which rests on the implied proposition that attorney's fees must be awarded under the PPPA when interest and

14

penalties are awarded, is without merit.  The attorneys fees provision of the PPPA is a separate provision from the interest and penalties provision of that statute, and the two are determined under separate standards. Compare 73 PA. STAT. § 512(a)[10] with 73 PA. STAT. § 512(b).[11]  "While the mandatory language of section 512(b) requires an award of attorney's fees to a substantially prevailing party," Zavatchen v. RHF Holdings, Inc., 907 A.2d 607, 610 (Pa. Super. 2006), appeal denied, 591 Pa. 685, 917 A.2d 315 (2007), the interest and penalties provision does not. See 73 PA. STAT. § 512(a).  Further, "the issue of whether any party to a lawsuit substantially prevailed is left to the trial court's discretion." Zavatchen, 907 A.2d at 610.  The Arbitration Panel may well have determined that MasTec was a "substantially prevailing party" on the Meyersdale Project but not on the Waymart Project.  Thus, there is a colorable basis for the attorneys award.  MSE fails to demonstrate that the award is totally irrational or represents a manifest disregard for the law.

---

[10]This provides:

(a) Penalty for failure to comply with act.--If arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor or subcontractor has failed to comply with the payment terms of this act, the arbitrator or court shall award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld. An amount shall not be deemed to have been wrongfully withheld to the extent it bears a reasonable relation to the value of any claim held in good faith by the owner, contractor or subcontractor against whom the contractor or subcontractor is seeking to recover payment.

73 PA. STAT. § 512(a).

[11] This provides:

(b) Award of attorney fee and expenses.--Notwithstanding any agreement to the contrary, the substantially prevailing party in any proceeding to recover any payment under this act shall be awarded a reasonable attorney fee in an amount to be determined by the court or arbitrator, together with expenses.

73 PA. STAT. § 512(b).

15

To the extent MSE's argument attacks the quality of the evidence underlying the arbitrators' determination, the argument is without merit. "[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award." Wallace, 378 F.3d at 193 (internal quotation marks omitted). Accordingly, the motion to vacate the award on the grounds of irrationality or manifest disregard for law is denied.

### b. Confirmation

Upon the denial of a motion for vacatur, the Court must confirm an arbitration award. See 9 U.S.C. § 9 (upon an application for an order to confirm an arbitration award, the court must do so unless the award is vacated, modified, or corrected under § 10 or § 11).; N.Y. CPLR § 7511(e)("upon the denial of a motion to vacate or modify, [the court] shall confirm the award"); Roberts v. Finger, 2007 WL 1093487, at * 7 (N.Y. Sup. Ct., N.Y. County, April 3, 2007)( "If a party seeking to vacate the award cannot establish the existence of one of the [] grounds [enumerated in CPLR 7511(b)(1)], the court must confirm the award.")(citing NY State Nurses Ass'n v. Nyack Hospital, 258 A.D.2d 303 (1st Dept 1999), appeal denied, 93 N.Y.2d 810 ()). Therefore, the Arbitration Award is confirmed and will be reduced to a judgment. See 9 U.S.C. § 9.

### c. Prejudgment Interest

MasTec also seeks prejudgment interest on the award "at the rate of 9% per annum from the date of the award until the date judgment is entered." Belter April 3, 2008 Aff., p. 10. MSE offers no opposition to this specific request.

> "The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." SEIU v. Stone Park Assocs., LLC, 326 F.Supp.2d 550, 555 (S.D.N.Y.2004). In this Circuit, there

is "a presumption in favor of prejudgment interest." <u>Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.</u>, 737 F.2d 150, 154 (2d Cir.1984). "Courts of this Circuit have found an award of pre-judgment interest to be appropriate where the agreement between the parties states that an arbitration decision is final and binding." [<u>Herrenknecht Corp. v. Best Rd. Boring</u>, 2007 WL 1149122, at *6 (S.D.N.Y. Apr. 16, 2007)].

<u>Abondolo v. H. & M.S. Meat Corp.</u>, 2008 WL 2047612, at * 3 (S.D.N.Y. May 12, 2008).

The parties' agreements contain a clause that the disputes between them "will be decided by binding arbitration." Belter March 13, 2008 Aff., Ex. B, p. 25  (Ex. CS-A to parties subcontractor agreements, ¶ 15.01(C)) [ dkt. # 5].  Given the presumption in favor of prejudgment interest and the parties' agreement for binding arbitration, MasTec's application for prejudgment interest is granted.

## V. CONCLUSION

For the reasons discussed above, MasTec North America, Inc.'s Petition to confirm the January 8, 2008 Arbitration Award rendered <u>In the Matter of the Arbitration between MSE Power Systems, Inc. and  MasTec North America, Inc.</u>, RE 15 110 Y 00609 04 ("Arbitration Award"), is **GRANTED**.  The Arbitration Award is **CONFIRMED**, and the terms of the Arbitration Award shall be **reduced to a judgment in favor of MasTec North America, Inc. against MSE Power Systems, Inc. in the amount of $2,652,419.12.**

MasTec North America, Inc.'s application for prejudgment interest on the award at the rate of 9% per annum from the date of the award (January 8, 2008) until the date judgment is entered is **GRANTED**, and the judgment shall include this provision.

MSE Power Systems, Inc.'s cross-motion to vacate the Arbitration Award is **DENIED.**

**IT IS SO ORDERED**.

DATED:July 8, 2008

*[signature]*
Thomas J. McAvoy
Senior, U.S. District Judge